IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**MELODY JANE COULTER**            *
                                   *
      v.                           *     Civil Case No. GLR-15-1545
                                   *
**COMMISSIONER, SOCIAL SECURITY**  *
                                   *
*************

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Ms. Coulter's reply memorandum. [ECF Nos. 12, 16, 17]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Ms. Coulter's motion be denied, that the Commissioner's motion be granted, and that the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Coulter filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on June 26, 2011, alleging that her disability began on March 17, 2011. (Tr. 183-91). Her applications were denied initially on October 14, 2011, and on reconsideration on July 18, 2012. (Tr. 59-78, 79-80, 118-31). An Administrative Law Judge ("ALJ") held a video hearing on January 30, 2014, at which Ms. Coulter was represented by counsel. (Tr. 34-58). Following the hearing, the ALJ determined that Ms. Coulter was not

disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 16-33). The Appeals Council denied Ms. Coulter's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Coulter suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine with ankylosing spondylitis, hypertrophic changes in the knees, obesity, migraine headaches, and depression. (Tr. 21). Despite these impairments, the ALJ determined that Ms. Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and carry 10 pounds frequently and 20 pounds occasionally, she needs to have the option to changes [sic] positions at will while remaining on task, she can occasionally climb but cannot climb ropes, ladders, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, and crawl. Nonexertionally, she is able to use common sense understanding to perform instructions provided in oral, written, or diagrammatic form consistent with a range of unskilled work at or below reasoning level 3 as those terms are defined in the Dictionary of Occupational Titles.

(Tr. 23). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Coulter could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 28).

Ms. Coulter disagrees. She raises two primary arguments on appeal. First, she argues that the ALJ erred in his evaluation of whether she met Listing 1.04A. Second, she argues that the ALJ's credibility findings were unsupported by substantial evidence. Each argument lacks merit for reasons discussed below.

Turning to Ms. Coulter's first argument, she asserts that the ALJ "erred at step three of the sequential evaluation by failing to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04A." Pl. Mem. at 8. Listings describe each of the major body system impairments that the Agency "consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20

C.F.R. §§ 404.1525(a), 416.925(a).  Listings 1.00 *et. seq.* through Listings 11.00, *et. seq.*, Listings 13.00 *et. seq.*, and Listings 14.00 *et. seq.*, pertain to physical impairments.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Each physical impairment listing contains a set of signs or objective medical findings which must be present for the claimant's impairment to meet the listing.  *See, e.g.*, *id.* at § 4.02.

Listing 1.04 pertains to disorders of the spine.  To meet the Listing, a claimant must have a diagnosed spinal impairment "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," with additional medical findings delineated in subsections A through C.  *Id.* at § 1.04.  Ms. Coulter argues that the ALJ erred in his evaluation of whether she met Listing 1.04A.  Pl. Mem. at 8-31.  In addition to the above noted requirements, subsection A also requires that a claimant demonstrate the following:

> Evidence of nerve root compression characterized by nero-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.  While Listing 1.04A includes various medical findings necessary to meet the Listing, those findings must be precipitated by "[e]vidence of nerve root compression." *Id.*  I note that in order to meet a listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 381, 384 (D. Md. 2000).

In the instant case, the ALJ found that Ms. Coulter's impairments did not meet or medically equal Listing 1.04.  Specifically, the ALJ stated that, "[h]er degenerative disc disease has not resulted in a compromise of a nerve root or the spinal cord, motor loss, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively or perform fine and gross movements effectively meeting sections 1.04 or 1.02 of Appendix 1."

3

(Tr. 22). Ms. Coulter argues that the ALJ's analysis of whether she met Listing 1.04A was deficient because he "broadly conflated the various subsections into one incomplete summation of Listing 1.04," and thus, "erred by requiring Plaintiff to produce more evidence than the listing requires." Pl. Mem. at 10.  This argument, however, misconstrues the ALJ's analysis of Listing 1.04, namely because the ALJ reviewed all three subsections of Listing 1.04 simultaneously and concluded that Ms. Coulter's impairments did not meet any of the individual subsections.  The ALJ did not, as Ms. Coulter argues, require her to prove more than necessary to meet Listing 1.04A by noting that she is able to ambulate effectively, since that is a requirement of 1.04C. The same is true of the ALJ's findings that Ms. Coulter did not exhibit spinal arachnoiditis or lumbar spinal stenosis, which are required by subsections B and C, respectively, or the inability to perform fine and gross movements effectively as required by Listing 1.02 for major dysfunction of a joint.

Ms. Coulter also argues that the ALJ failed to connect the listing requirements to the evidence.  In particular, she contends that, "The ALJ provided little explicit analysis, and never connected the evidence back to the specific 1.04A requirements." Pl. Mem. at 16.  In *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013), the Fourth Circuit held that remand was warranted, as pertinent to this case, because, "The ALJ's decision regarding the applicability of Listing 1.04A [was] devoid of reasoning."  The *Radford* court noted that the ALJ in that case stated that he had considered Listing 1.04A among several listings and summarily concluded that the claimant did not meet or equal the listing, and that there were no medical opinions of record stating that the claimant met or equaled the listing. *Id.*  The Court held that the ALJ's lack of discussion made it "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings," particularly in light of "probative evidence strongly suggesting that [the claimant]

meets or equals Listing 1.04A." *Id.* Furthermore, the Fourth Circuit found that the ALJ failed to indicate why he gave more or less weight to the medical opinions of record, including his reasons for giving more weight to the opinions of non-treating State agency physicians than to the claimant's treating physicians. *Id.* at 295-96.

The ALJ's discussion of Listing 1.04A in the instant case does not suffer the same deficiencies at issue in *Radford*. Rather, the ALJ's discussion of his RFC assessment, the objective medical evidence, and the medical opinions of record provide clear and substantial evidence for his finding that Ms. Coulter's impairments did not meet or equal Listing 1.04A. Specifically, the ALJ noted that after a cervical surgery in 2011, Ms. Coulter stated that although she had persistent tingling in her left forearm, her pain had resolved. (Tr. 25). Likewise, the ALJ cited findings from examinations stating that Ms. Coulter exhibited a full range of motion in her neck, normal muscle tone and bulk, and no sensory deficits. *Id.* The ALJ noted that her grip strength in her upper left extremity was occasionally decreased, but that she had normal fine motor skills. *Id.* Similarly, regarding her lumbar spinal impairment, the ALJ cited the normal findings from a nerve conduction study of Ms. Coulter's lower extremities, as well as her reports that her pain had been responsive to medication and to a patch. *Id.* The ALJ also noted that during examinations, Ms. Coulter "had no spinal tenderness, her posture was normal, and straight leg raises were usually full." *Id.*

In addition to reviewing the medical evidence, the ALJ also reviewed the opinions of State agency physicians who reviewed Ms. Coulter's medical records. The State agency physicians, Dr. S. K. Najar, M.D. and Dr. Thomas Lauderman, D.O., were the only physicians to offer opinions of Ms. Coulter's physical limitations in the record. The State agency physicians both opined that Ms. Coulter did not meet any subsection of Listing 1.04, and that she was

capable of performing a reduced range of light work with additional limitations including: lifting or carrying 10 pounds frequently, and 20 pounds occasionally; standing for two hours per day; sitting for six hours per day; occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. (Tr. 63-66, 73-76, 86-90, 98-102). Regarding the State agency physicians' opinions of Ms. Coulter's physical impairments, the ALJ stated, "The undersigned agrees with the postural and lifting limitations and ability to lift and carry, but the evidence as a whole shows that the claimant's obesity is severe and that when taken in conjunction with her musculoskeletal impairments, it limits her ability to stand and walk more than two hours a day." (Tr. 27). Thus, the ALJ ultimately found that Ms. Coulter had greater physical limitations than those provided in the only medical opinions of record, but nevertheless fell short of meeting Listing 1.04A.

While the ALJ's discussion of the medical evidence and opinions is, I acknowledge, brief, I find that the ALJ supported his finding that Ms. Coulter did not meet or equal Listing 1.04A with substantial evidence, particularly in light of his citation to objective medical evidence such as nerve conduction studies, and the fact that he relied on the only medical opinions of record regarding Ms. Coulter's physical impairments. In addition, I note that in *Radford*, the Court emphasized that it could not determine the weight the ALJ accorded to the medical opinions of record, and the fact that the ALJ rejected the opinion of the claimant's treating physician. *Radford*, 734 F.3d at 295-96. Neither is true in this case, and the ALJ provided sufficient support for his finding that Ms. Coulter did not meet Listing 1.04A to allow for meaningful review. Accordingly, I recommend that the Court affirm the Commissioner's decision.

Finally, with respect to Listing 1.04A, Ms. Coulter argues that the medical evidence

demonstrates that she met each of the Listing's requirements. As noted above, the symptomatic requirements of Listing 1.04A must be precipitated by "evidence of nerve root compression." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04A. In finding that Ms. Coulter did not meet Listing 1.04A, the ALJ stated, "[h]er degenerative disc disease has not resulted in a compromise of a nerve root or the spinal cord . . . ." (Tr. 22). Furthermore, in the discussion of his RFC assessment, the ALJ noted that nerve conduction studies of Ms. Coulter's lower extremities were normal. (Tr. 25). Ms. Coulter argues that other evidence in the record supports a finding of nerve root compression. However, none of the evidence she cites provides evidence of nerve root compression after her cervical spinal surgery in May of 2011. Prior to her surgery, her medical records indicated that she had "residual left upper extremity pain with impingement of the left C7 nerve root, suggested on [an] MRI scan." (Tr. 291). After her cervical surgery, Ms. Coulter cites several medical records noting pain and radiculopathy. Pl. Mem. at 19-20 (citing Tr. 303, 305, 312, 315, 603, 605, 612, 614). However, none of these records mention nerve root compression, and radiculopathy "is legally insufficient to meet or equal Listing 1.04A" absent any evidence of nerve root compression." *Crowl v. Colvin*, Civil No. BPG-15-446, 2016 U.S. Dist. LEXIS 6896, at *5-6 (D. Md. Jan. 20, 2016) (citing *Smick v. Colvin*, 2015 WL 4092449, at *2 (D. Md. July 6, 2015)). Notably, Ms. Coulter exclusively cites treatment records which are reliant on her own reports of pain, but did not cite objective medical evidence from that time period, such as a nerve conduction study finding "no evidence for any nerve injury." (Tr. 510). Thus, I am unconvinced that the ALJ erred in finding that she did not meet Listing 1.04A, and recommend that this Court affirm the Commissioner's decision.

Ms. Coulter also argues at considerable length that she met each of Listing 1.04A's other requirements. However, 1.04A's other requirements must be precipitated by evidence of nerve

root compression. Thus, without the requisite evidence of nerve root compression, as discussed above, Ms. Coulter's arguments regarding her other symptoms are moot. I note that this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). While there may be substantial evidence in the record that would support a finding of disability, in addition to substantial evidence refuting such a finding, this Court should not disturb the ALJ's conclusion so long as it is one of the conclusions supported by substantial evidence. In this case, the ALJ adequately supported his conclusion that Ms. Coulter did not meet or equal the requirements of Listing 1.04A, and accordingly, I recommend that this Court affirm the ALJ's decision.

Next, Ms. Coulter argues that the ALJ failed to support his findings regarding Ms. Coulter's credibility with substantial evidence. Specifically, she contends that the ALJ relied on her testimony about her activities of daily living "without determining whether such activities could be sustained." Pl. Mem. at 31. Specifically, she states that her "capacity to sporadically engage in such activities is not evidence that she can perform a full-time job on a sustained basis in a competitive work environment." Pl. Mem. at 32. In support of her argument, Ms. Coulson cites Social Security Ruling ("SSR") 96-7p,[1] which notes that an "individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms." Pl. Mem. at 32.

---

[1] I note that after Ms. Coulson filed her Memorandum [ECF No. 12], but before she filed her Response [ECF No. 17], SSR 96-7p was superseded by SSR 16-3 on March 28, 2016. The Agency stated that the purpose of SSR 16-3 is to "eliminat[e] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." Furthermore, SSR 16-3 instructs "adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms." Because neither party cited or had the opportunity to respond to the superseding SSR 16-3, I will consider SSR 96-7p in my analysis.

Social Security regulations provide a two-step framework for considering subjective complaints. First, the ALJ determines whether "medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 416.929(b). The ALJ then evaluates the intensity and persistence of the claimant's symptoms by considering the record of evidence in its entirety. *Id.* at §§ 404.1529(c), 416, 929(c). In doing so, the ALJ considers the objective medical evidence, as well as other evidence including the claimant's daily activities, the frequency and intensity of pain and other symptoms, precipitating and aggravating factors, the effectiveness of medication and other treatment methods, and other factors regarding functional limitations or restrictions due to pain or other symptoms. *Id.*

In the instant case, after summarizing Ms. Coulter's activities of daily living, which include cooking, doing light household chores, shopping, and going out to eat, the ALJ stated, "The above-noted findings and activities are clearly inconsistent with severe symptoms precluding all work-related activity." (Tr. 26). Thus, the ALJ clearly relied on Ms. Coulter's activities of daily living in making his findings of her RFC. However, the ALJ also relied on other factors, as outlined by Social Security regulations. Notably, the ALJ cited objective medical evidence including a nerve conduction study and a normal brain MRI, noted that Ms. Coulter's back and neck pain had improved with medication and with a patch, and considered Ms. Coulter's testimony about side effects from her headache medication. *Id.* In addition, the ALJ thoroughly reviewed and weighed each of the medical opinions of record in reaching his decision. (Tr. 26-27). Thus, the ALJ reviewed all of the evidence of record in weighing Ms. Coulter's credibility, pursuant to Social Security regulations. Accordingly, I find no basis for remand and recommend that the Court affirm the Commissioner's decision.

In addition to the arguments raised by the parties, I note inconsistencies between the

hearing testimony and the ALJ's opinion, but ultimately find them harmless. First, the ALJ did not include limitations related to Ms. Coulter's ability to reach, which were provided in hypotheticals to the VE at the hearing, in his RFC assessment.[2] Rather, the ALJ found that the medical evidence did not ultimately support a finding of "limitation in her ability to use her upper extremities for reaching or fine or gross manipulations." (Tr. 25). Even including these additional limitations, however, the VE found that Ms. Coulter was capable of performing jobs existing in substantial numbers in the national economy. (Tr. 53-54). Because the VE testified that Ms. Coulter was able to perform jobs, even with additional limitations not included in the ALJ's opinion, I find that any error or inconsistency is harmless.

Likewise, I note that while the ALJ found that Ms. Coulter was capable of performing a reduced range of sedentary work, he found that she could "lift and carry weights or up to 10 pounds frequently and 20 pounds occasionally." (Tr. 26). The ALJ appears to conflate requirements of sedentary and light work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work at lifting no more than 10 pounds frequently, and greater than 10 pounds occasionally). Nevertheless, all of the jobs provided by the VE at the hearing were at the sedentary level. (Tr. 56-57). Thus, any error would be harmless.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 16];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 12];

---

[2] Specifically, the ALJ stated, "I would indicate that the individual can only occasionally perform overhead reaching bilaterally, and can only occasionally reach with the left upper extremity. Able to frequently reach with the right upper extremity. I would limit handling and fingering with the left upper extremity to, for this hypothetical, frequent, but not constant. I will note that as testified that the hypothetical individual would be right-hand dominant. So, the left upper extremity is the nondominant hand." (Tr. 52-53). Upon questioning by the VE, the ALJ further clarified, "All overhead [reaching] is occasional. Right. . . . All reaching with the left hand is occasional. With the right hand, it's frequent, yes." (Tr. 53).

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: June 22, 2016                                                     /s/
                                                                  Stephanie A. Gallagher
                                                                  United States Magistrate Judge